UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 1:25-cr-10367-MJJ-1 |
| v. | ) | |
| | ) | |
| | ) | |
| RAYMOND F. CLINTON, JR. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes the defendant, Raymond Clinton, before this Honorable Court and respectfully submits the following memorandum in support of his request that this Court sentence him to fifteen years in prison, followed by a term of life of supervised release. Despite suffering childhood trauma, Mr. Clinton generally lived a stable and productive life, worked for the same employer for nearly forty years, and was married for over fifty years. Mr. Clinton had no criminal convictions prior to the instant offense. His significant decline, both in mental health and decision-making, arose in the wake of his wife's sudden death. Mr. Clinton accepts responsibility for his horrific actions. As a seventy-four-year-old man, an incarcerated sentence of fifteen years will almost certainly act as a life sentence. Mr. Clinton submits that his recommended sentence is sufficient but not greater than necessary to achieve the purposes of sentencing pursuant to 18 U.S.C. § 3553(a).

# BACKGROUND

Mr. Clinton is a seventy-four-year-old man who understands that his horrific actions have caused severe damage in multiple people's lives. Mr. Clinton provides the following background for this Honorable Court, not in any way to excuse or mitigate his actions.

## I. Early Life and Childhood

Growing up in Brockton, Mr. Clinton lived with his mother and three siblings. (PSR ¶¶ 44, 46). Mr. Clinton had great relationships with his siblings, and although his family struggled to make ends meet at times, Mr. Clinton thinks his mother did the best she could and he had a close relationship with her. Mr. Clinton remains in contact with his brother, Donald, via letters.[1]

Mr. Clinton experienced challenging life events at a very young age. When Mr. Clinton was seven years old, he learned that his father killed his father's former spouse. (PSR ¶ 44-45). He recalls that the court case took several years to complete, and his father died while incarcerated when Mr. Clinton was approximately nine years old. Also around that age, Mr. Clinton suffered repeated abuse, which is described in more detail in the Pre-Sentence Report and in Wendy Carlson's Evaluation. (PSR ¶ 45; Ex. B). Mr. Clinton did not grapple with these childhood traumas, either at the time or later in life.

---

[1] Donald has had several operations on his throat due to cancer and struggles to speak. Mr. Clinton's two other siblings have passed away. (PSR ¶ 49-51).

Mr. Clinton attended Brockton High School but only completed the ninth grade, because he thereafter left school in order to get a job and help his mother financially. (PSR ¶ 64). A year later, Mr. Clinton enlisted in the United States Army, attending boot camp at Fort Fix, in New Jersey, but was unable to complete training because of his newly diagnosed asthma.[2] (PSR ¶ 65).

## II. Employment History

Mr. Clinton worked various jobs as a teenager and young man, but soon settled into his fulfilling career where he would spend most of his life. Notably, from 1987 until 2025, Mr. Clinton worked at the same company: Controlled Environment Systems in Taunton. (PSR ¶ 66). He rose in the ranks and became a trusted and valued part of the company. When he tried to retire, he was soon brought back on in a consulting role.

## III. Death of Wife

Mr. Clinton was married to his wife Rhonda for fifty-one years. (PSR ¶ 52). Together they had five children. (PSR ¶ 53-57).

In May 2022, when Mr. Clinton arrived home after work one day, he found his wife dead in the basement. (PSR ¶ 45, 52). Although he tried to revive her, Mr. Clinton soon learned that she either had a blood clot or aneurysm and had likely been deceased for several hours by the time he got there. Mr. Clinton recalls a conversation with his wife the night before about her swollen leg. Mr. Clinton deeply regrets his

[2] He currently uses a nebulizer one to three times daily and a rescue inhaler as needed. (PSR ¶ 60).

response: that if it was still a problem the following day, that he would take her to the doctor after work.

Mr. Clinton has suffered extreme challenges ever since, although he has poor insight into the effect that his wife's death had on him. (See generally Ex. B). Mr. Clinton describes the weeks, months, and years that followed his wife's death as a "blur." He recognizes in hindsight that he went back to work much sooner than was healthy for him, thinking that if he kept busy, he could keep his mind off his wife's death and his significant grief. He now knows that this backfired, resulting in his grief compounding because he was not facing it, and Mr. Clinton increased his substance use instead of seeking help. Mr. Clinton incorporates by reference the evaluation conducted by Wendy Carlson, discussing the possible impacts on Mr. Clinton, as a result of this trauma, and other decline.[3] (Ex. B).

## IV. <u>Institutional Behavior</u>

Mr. Clinton has been disciplinary report free during his pretrial incarceration at the Plymouth County House of Correction. (PSR ¶ 5). He has been productive while incarcerated; although logistically prevented from having a job, Mr. Clinton has completed numerous programs and obtained various certificates. (Ex. C). In addition to the certificates attached, Mr. Clinton has been participating in a book club and has completed two history courses, one covering the War of 1812 and one

[3] It has been alleged that Mr. Clinton's misconduct began in June 2022, less than a month after his wife's death.

discussing the "Campaign of the American Revolution." He also has approximately 125 hours in pending but uncompleted courses.

**RECOMMENDED SENTENCE**

Mr. Clinton pled guilty to a one-count Indictment charging sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a) and (e), and Mr. Clinton expressed a willingness to do so and accept responsibility very early in this case. This is grave conduct and a grave offense. Mr. Clinton knows that.

Mr. Clinton acknowledges the seriousness of the conduct and this conviction. Mr. Clinton respectfully disagrees, however, with the guidelines calculations performed by the Probation Department, particularly as to the extent to which it relies on conduct beyond that which comprises the offense conduct in this case, for which Mr. Clinton will be held accountable in the pending state cases.[4] The offense in this case is premised on video from May 12, 2025. Mr. Clinton is not charged with, and did not plead guilty to, the span of sexual assaults detailed in the offense conduct, and will answer to those charges in state court. Mr. Clinton understands what can be considered in the guidelines calculation. He submits, however, that the Probation Department's calculations reach so far beyond admitted conduct that they unfairly penalize Mr. Clinton for uncharged conduct.

---

[4] For example, Mr. Clinton submits that only two levels should be added pursuant to U.S.S.G. § 2G2.1(b)(1)(B), instead of § 2G2.1(b)(1)(A). (PSR ¶ 22). The minor was fourteen years old (or, at the very least, twelve years old), at this time of this offense. Application of subsection B instead of subsection A of U.S.S.G. § 2G2.1(b)(1) is therefore appropriate, resulting in a two-level increase instead of the four-level increase included by Probation.

Mr. Clinton is requesting a variant sentence of fifteen years in prison for the instant offense, taking into account his lack of a criminal history, overwhelmingly productive life prior to his decline, and his decline following his wife's death leading to the instant offense. Mr. Clinton lived a productive and law-abiding life for over seventy years. Mr. Clinton does not have a criminal history; he has no criminal convictions and has not been incarcerated before. In the aftermath of his wife's passing, he went into a downward spiral, using substances and not recognizing his mental health and other needs. He is prepared to be punished for his abhorrent conduct during that time; he simply asks this court to sentence him based on consideration of all the appropriate factors. Mr. Clinton is now seventy-four years old. According to the Social Security Administration's Actuarial Period Life Table,[5] at his age of seventy-four, he has a life expectancy of a little over twelve years. As a seventy-four-year-old man, imprisonment will inevitably take a harsher toll on Mr. Clinton compared to others, and, makes it even less likely that he will reach that twelve-year life expectancy estimate. Not only is it unlikely that Mr. Clinton will live to be released if given a fifteen-year period of incarceration, but Mr. Clinton would be nearing ninety years old, have severely limited capabilities, and would be monitored for the rest of whatever life he has left. Mr. Clinton submits that a fifteen-year sentence is sufficient but not greater than necessary to achieve the purposes of sentencing pursuant to 18 U.S.C. § 3553(a).

[5] 2023 Version, as used in the 2026 Trustees Report, available via: https://www.ssa.gov/oact/STATS/table4c6.html

## Conclusion

For the reasons stated above, Mr. Clinton moves that this Court impose a sentence of fifteen years of incarceration, followed by a term of life of supervised release.

Respectfully submitted,

**Raymond Clinton,**

by his attorney,

*/s/Joshua Wood*

Joshua Wood, Esq.
Benzaken, Sheehan & Wood, LLP
1342 Belmont Street, Suite 102
Brockton, MA 02301
(Tel) 508-897-0001
(Fax) 508-587-5455
BBO No. 660922
*jwood@bmswlaw.com*

Dated: August 26, 2026

## Certificate of Service

I hereby certify that a copy of this sentencing memorandum, along with accompanying exhibits, has been served upon counsel for the United States and all registered parties by CM/ECF or email.

*/s/ Joshua Wood*

Dated: August 26, 2026